**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **ALOFT MEDIA, LLC,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 6:08-CV-50** |
| | § | |
| **MICROSOFT CORP., et al.** | § | |

**REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE**

In this case, Plaintiff Aloft Media, LLC ("Aloft") accuses Defendants Google Inc., Yahoo! Inc., and AOL LLC (collectively "Defendants") of infringing United States Patent No. 7,305,625 ("the '625 patent"). Before the Court is Defendants' Motion for Partial Summary Judgment on Invalidity, (Doc. No. 138), and Reply in Support, (Doc. No. 154), and Aloft's Response in Opposition, (Doc. No. 149). For the reasons stated below, the Court **RECOMMENDS** that Defendants' Motion be **DENIED**.

**BACKGROUND**

The '625 patent "relates to networking, and more particularly to data networking interfaces." '625 patent at 1:14-15. The focus of this present Motion is on the language of claims 1-19:

> 1. A system for use in association with network data, comprising:
> a server,
> computer code for working in association with a network browser window associated with a network browser for displaying Internet content associated with uniform resource locators (URLs) during network browsing; and
> computer code for displaying a plurality of identifiers adjacent to the window in which the content is displayed;
> wherein a user is allowed to select at least one of the identifiers, for correlating one of the URLs with the selected identifier;
> wherein, after the selection, at least one of the URLs selected during use of the network browser is correlated with the selected identifier and stored in a manner that is dependent on a selection of the selected identifier which is distinct with respect to the at least one selected URL;
> wherein the user is allowed to manually enter the selected identifier which is distinct

>    with respect to the at least one selected URL; and
>  computer code for storing the identifiers and the at least one selected URL on a user device that has the network browser implemented thereon;
>  wherein the server is capable of being in communication with the user device via a network, the server for storing the identifiers;
>  *wherein information associated with the identifiers is stored at both the user device and the server.*
>  2. A system, comprising:
>  a server;
>  computer code for working in association with a network browser including a back button, a forward button, a refresh button, and a home button, and for displaying a plurality of identifiers in a portion of a graphical user interface separate from a window in which content associated with uniform resource locators (URLs) is displayed; and
>  computer code for allowing a user to select, during use of the network browser, one of the identifiers in the portion of the graphical user interface separate from the window in which the content associated with the URLs is display, for correlating, after the selection, at least one of the URLs with the selected identifier in a manner that is based on the selected identifier which is distinct with respect to the at least one URL;
>  wherein the user is allowed to manually enter the selected identifier which is distinct with respect to the at least one URL;
>  *wherein the identifiers and the at least one URL are stored on a user device with the network browser executable thereon*; and
>  the server being in communication with the user device via a network, the server for storing the identifiers;
>  *wherein the identifiers and information associated with the identifiers are stored at both the user device and the server.*
>  . . . .
>  9. A system as recited in claim 2, *wherein the identifiers are accessed via menus.*
>  10. A system as recited in claim 2, *wherein the identifiers are accessed via sub-menus.*
>  11. A system as recited in claim 2, *wherein the identifiers are selected by being clicked.*

'625 patent (emphasis added). Defendants assert that the italicized portions of the above quoted language render claims 1, 2, 9, 10, and 11 indefinite. Defendants argue that these claims are mixed system/method claims which are invalid under Federal Circuit precedent. In addition, Defendants assert that claims 3-19 are indefinite because they depend on claims 1 and 2. Aloft argues that claims

1-19 are system claims and not indefinite.

## SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Nike Inc. v. Wolverine World Wide, Inc.,* 43 F.3d 644, 646 (Fed .Cir.1994); Fed.R.Civ.P. 56(c). The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). If the moving party meets this burden, the nonmoving party must then set forth "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987).

## APPLICABLE LAW

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). In claim construction, courts examine the patent's intrinsic evidence to define the patented invention's scope. *See id.*; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). This intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id*. (quoting *Vitronics*

*Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent. *Phillips*, 415 F.3d at 1312-13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

A party seeking to invalidate a patent must overcome a presumption that the patent is valid. *See* 35 U.S.C. § 282; *United States Gypsum Co. v. National Gypsum Co.,* 74 F.3d 1209, 1212 (Fed.Cir.1996); *Hibritech Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1375 (Fed.Cir.1986). This presumption places the burden on the challenging party to prove the patent's invalidity by clear and convincing evidence. *United States Gypsum Co.,* 74 F.3d at 1212.

35 U.S.C. § 112 requires that claims be particular and distinct. "The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112 ¶ 2. The primary purpose of the requirement of definiteness is to provide warning to those skilled in the art of what will constitute infringement. *See United Carbon Co. v. Binney Co.,* 317 U.S. 228, 236 (1942). The definiteness standard is one of reasonableness under the circumstances, requiring that, in light of the teachings of the prior art and the invention at issue, the claims apprise those skilled in the art of the utilization and scope of the invention with a reasonable degree of precision and particularity. *See Shatterproof Glass Corp. v. LibbeyOwens Corp.,* 758 F.2d 613, 624 (Fed.Cir.1985). "A determination of indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims[, and] therefore, like claim construction, is a question of law." *Amtel Corp. v. Info. Storage Devices, Inc.,* 198 F.3d 1374, 1378 (Fed.Cir.1999).

A claim may be invalid if it combines two separate statutory classes of invention. *See IPXL Holdings, L.L.C. v. Amazon. com, Inc.,* 430 F.3d 1377, 1384 (Fed.Cir.2005). In *Ex parte Lyell,* the Board of Patent Appeals and Interferences held that reciting both an apparatus and a method of using that apparatus renders a claim indefinite under section 112, paragraph 2. 17 U.S.P.Q.2d 1548, 1550 (B.P.A.I. 1990) On the basis of this rule, the BPAI invalidated as indefinite a claim whose preamble described "an automatic transmission tool . . . and method for using same."

In *IPXL Holdings v. Amazon.com,* the Federal Circuit endorsed the reasoning of *Ex parte Lyell* by invalidating the following claim:

> The system of claim 2 [including an input means] wherein the predicted transaction information comprises both a transaction type and transaction parameters associated with that transaction type, *and the user uses* the input means to either change the predicted transaction information or accept the displayed transaction type and transaction parameters.

*Id.* (quoting patent) (emphasis added). The Federal Circuit explained that, because the claim recited use by a user as a claim limitation, it is unclear if infringement would occur when one creates a system that allows a user to change the predicted transaction information, or when a user actually uses the system. In other words, the claim language ambiguously claimed both a system and the method for using the system. *Id.* A potential seller of the claimed system would not know from the claim whether it might also be liable for contributory infringement if a buyer later performs the claimed method of using the system. Thus, the Federal Circuit found the claim invalid under section 112, paragraph 2. *Id.*

The Federal Circuit recently clarified its holding in *IPXL Holdings*. In *Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, the Federal Circuit explained that apparatus claims

are not necessarily indefinite for using functional language. 520 F.3d 1367, 1375 (Fed. Cir. 2008) (citing *Halliburton Energy Servs. v. M-I LLC*, 514 F.3d 1244, 1255 (Fed. Cir. 2008)). For example, functional language which merely describes the capability of the claimed invention will not render a claim invalid under *IPXL Holdings*. *Id.* This sort of language does not impermissibly mix two different statutory classes of subject matter. *See Yodlee, Inc. v. Cashedge, Inc.*, No. 05-01550, 2006 WL 3456610 at *4-6, (N.D. Cal. Nov. 29, 2006) (finding that the claims at issue valid because they "describe what the apparatuses do, when used in a certain way. They do not claim *use* of the apparatuses").

This reasoning had already been relied upon extensively by Courts evaluating indefiniteness arguments under *IPXL Holdings*. In *Yodlee, Inc. v. Cashedge, Inc.*, the Court found that the following apparatus claim language did not render the claims at issue indefinite because it describes capabilities: "upon activation of the presented link, . . . the client computer performs the steps of . . .," "upon invocation of a hyperlink by the associated user, the portal software invokes a URL," "the software, in response to initiation by the client, . . . identifies third-party Internet Web sources."*Id.* In *Toshiba Corp. v. Juniper Networks, Inc.*, the Court found that the following apparatus claim language describes capability: "wherein the control message processing unit communicates with the next hop node . . . ." No. 03-1035, 2006 WL 1788479 at *4 (D. Del. June 28, 2006). In *Duhn Oil Tool, Inc. v. Cooper Cameron Corp.*, the Court found that the following apparatus claim language describes capabilities: "wherein an axial force acts on the generally elongate member and is reacted in both the first tubular member flange and the second flange." 474 F. Supp. 2d 1148, 1164 (E.D.

Cal. 2007).[1] In all of these cases, the Courts determined that the claim language at issue offered sufficient notice to potential defendants as to the actions which would constitute infringement.

Overall, the parties have identified fourteen cases involving *IPXL Holdings* invalidity arguments, but only one Court has invalidated a claim under *IPXL Holdings*. *See Ariba, Inc. v. Emptoris, Inc.*, No. 9:07-cv-90, 2008 WL 3482521 at *8 (E.D. Tex. August 7, 2008). In *Ariba*, the claim language at issue was:

> 31. A bidding device operated by a potential seller during an on-line auction, . . . wherein the auction includes a plurality of potential sellers each of which has an individual bid ceiling, . . . wherein a bid submitted by the potential seller operating the bidding device is compared to the corresponding bid ceiling of the potential seller operating the bidding device, and the bidding device communicates a bid message to the potential seller operating the bidding device in accordance with the results of the comparison . . .

*Id.* at *6-7 (quoting U.S. Patent 6,499,018). The patent-holder argued that this claim was broad enough to cover "the mere *use* of a web browser . . . to connect to the auctioneer's computer." *Id.* at *7.

The Court noted that the preamble claimed a bidding device, but one of the limitations involved a method step, *i.e.*, the bid submitted by the potential seller "is compared" to bids submitted by other sellers. *Id.* at *8. The parties agreed that this step must be performed by a computer other than the claimed bidding device. *Id.* at *7. The Court concluded that because "[a] device operated by a potential seller is claimed, and the step in question is performed by a different computer, operated by a buyer," potential infringers cannot determine if infringement occurs when a device is

---

[1] Defendants contend that *Duhn Oil* is inapplicable because it does not cite *IPXL Holdings*. However, Defendants do not dispute that the *Duhn Oil* Court found certain claim language to describe capability rather than a method step. *Id.* Although the Court did not explicitly cite *IPXL Holdings*, its analysis is just as relevant as any of the above-mentioned cases which do cite *IPXL Holdings*.

manufactured, or when it is actually used. *Id.* at 8. Thus, the claim was held invalid under *IPXL Holdings*. *Id.*

## ANALYSIS

Because Defendants seek to invalidate the claims at issue, they must demonstrate by "clear and convincing" evidence that one of ordinary skill in the art would not be able to reasonably determine the scope of the claimed inventions. *See United States Gypsum Co.,* 74 F.3d at 1212; *Shatterproof Glass Corp.,* 758 F.2d at 624. As the Federal Circuit has explained, the key issue when evaluating an *IPXL Holdings* invalidity argument is whether a potential infringer has notice of what action constitutes infringement, *i.e.* whether infringement occurs when a system is built, or only when the system is used. *See IPXL Holdings*, 430 F.3d at 1384. In this case, unlike in *IPXL Holdings* and *Ariba*, the notice to potential defendants is clear that infringement occurs when an infringing system is built.

Defendants argue that claims 1 and 2 include method steps that are performed by a person or device other than the claimed systems. They point out that while claim 1 describes a system with a server "for storing the identifiers" and computer code "for storing the identifiers and the at least one selected URL on a user device," it does not identify a component for storing "information associated with the identifiers." '625 patent at 5:19-20, 23-26. Defendants therefore argue that, as in *Ariba*, claim 1 and—by way of a similar argument—claim 2, are indefinite because the phrase "wherein information associated with the identifiers is stored at both the user device and the server" requires a user or component outside the system to store the information associated with the identifiers. In addition, they argue that the statements "is stored" and "are stored" require that

information actually be stored, *i.e.*, they describe method steps to be performed rather than capabilities of the systems. Aloft counters that the phrases at issue merely describe the capabilities of the systems, rather than method steps. That is, the systems are capable of storing identifiers and information associated with the identifiers on a server and a user device.

The fact that Defendants have proposed an interpretation of these claims that is not facially unreasonable, does not require the Court to adopt Defendants' interpretation. On the contrary, the Court must presume that the claims are valid unless Defendants present clear and convincing evidence that a person having ordinary skill in the art could not reasonably determine the scope of the claims at issue. *See United States Gypsum Co.,* 74 F.3d at 1212; *Shatterproof Glass Corp.*, 758 F.2d at 624. Unfortunately for Defendants, their interpretation of these claims does not stand up to scrutiny when viewed in light of the claim language as a whole and the specification of the '625 patent.

Unlike *Ariba*, the parties have not agreed that these claims require the action of a user outside the claimed system for infringement to occur. *See* 2008 WL 3482521 at *7. Rather, as in the numerous cases cited above, the language at issue describes the capabilities of the claimed inventions. *See Yodlee, Inc.*, 2006 WL 3456610 at *4-6; *Toshiba Corp.*, 2006 WL 1788479 at *4; *Duhn Oil Tool, Inc.*, 474 F. Supp. 2d at 1164. The wherein clauses at issue must not be read in isolation. These clauses link back to limitations described above. Thus, contrary to Defendants' assertion that the claims do not describe structure for storing the information on the user device and server, the claims explain that this function is performed by computer code.

Similarly, the statements "is stored" and "are stored" in claims 1 and 2 describe capabilities

of the systems; they do not describe method steps. Whether a user actually selects an identifier and corresponding information for storage on a user device and server is irrelevant. If an accused system is capable of storing this information as described in claim 1 or 2, the system infringes. *See Yodlee, Inc.*, 2006 WL 3456610 at *4. Upon reading claim 1, a person having ordinary skill in the art would notice that the claimed system includes "computer code for storing the identifiers . . . on a user device," and a "server for storing the identifiers," and that "at least one of the URLs selected during use is correlated with the selected identifier." That person would also recognize that the storage of information associated with the URLs is a feature of the system.[2] Thus, a person having ordinary skill in the art would reasonably be able to determine that claim 1 describes a capability of the system when it states that the "information associated with the identifiers is stored at both the user device and the server." Upon reading claim 2, a person having ordinary skill in the art would notice that the claimed system includes "computer code for allowing a user to select . . . one of the idenitifiers . . . for correlating . . . at least one of the URLs with the selected identifier." Thus, a person having ordinary skill in the art would reasonably be able to determine that claim 2 describes a capabilities of the system when it states that the "the identifiers and the at least one URL are stored on a user device," and that "the identifiers and information associated with the identifiers are stored at both the user device and the server."

With regard to claims 9-11, the highlighted language means that the identifiers are *accessible* via menus or submenus, and *selectable* by being clicked. Defendants do not dispute that permissive

---

[2]The patent specification explains that "the documentation related to the selected URL may be archived for later use. This feature is critical for storing evidence . . . as content of URLs are often subject to change." '625 patent at 3:37-40. This passage explains that the storage of information associated with the identifiers is a "critical" feature of the system.

language such as, a user "is allowed to" perform a certain task, conveys capability rather than a method step. *See Medtronic AVE, Inc. v. Cordis Corp.*, 516 F.Supp. 2d 741, 750-51 (E.D. Tex. 2007); (Doc. No. 154.) This is precisely how claims 9-11 are described in the specification, which describes an embodiment wherein a bucket "may by selected (i.e. clicked)," and "may be accessed by a series of submenus." '625 patent at 4:26-27. Because these claims "must be read in view of the specification, of which they are a part," the statements at issue must describe system capabilities rather than references to method steps. *Phillips*, 415 F.3d at 1314.

## CONCLUSION

Because Defendants have not presented clear and convincing evidence that claims 1-19 are invalid, the Court **RECOMMENDS** that Defendants' Motion be **DENIED**.

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations contained in the report. A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within ten days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United States Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

**So ORDERED and SIGNED this 24th day of March, 2009.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

11