**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **ALOFT MEDIA, LLC,** | § | |
| | § | |
| V. | § | **CIVIL ACTION NO. 6:08-CV-50** |
| | § | |
| **MICROSOFT CORP., et al.** | § | |

**MEMORANDUM OPINION AND ORDER**

This claim construction opinion construes the disputed term in United States Patent No. 7,305,625 ("the '625 patent"). In the above-styled cause of action, Plaintiff Aloft Media, LLC ("Aloft") accuses Defendants Google Inc. ("Google"), Yahoo! Inc., and AOL LLC of infringing the '625 patent. The parties have agreed to constructions for all of the terms in the '625 patent, except for one term disputed by Google. Aloft has filed an Opening Claim Construction Brief (Doc. No. 123) and a Reply Brief (Doc. No. 150), and Google has filed a Responsive Claim Construction Brief (Doc. No. 142). A *Markman* hearing was held on February 19, 2009. For the reasons stated herein, the Court adopts the constructions set forth below.

**OVERVIEW OF THE PATENT**

The '625 patent is a continuation-in-part of U.S. Patent Application 60/324,941 ("the '941 application"). It "relates to networking, and more particularly to data networking interfaces." '625 patent at 1:14-15. The Abstract states:

> An interface is provided for data networking. Included is a network browser window associated with a network browser for displaying content associated with uniform resource locators (URLs) during network browsing. Also displayed is a plurality of identifiers adjacent to or separate from the window in which the content is displayed. In use, a user is allowed to pre-select at least one of the identifiers. Moreover, after the pre-selection, content associated with at least one URL displayed during use of the network browser is correlated with the pre-selected identifier.

'625 patent. The patent discloses several preferred embodiments, all of which relate to intellectual

property management and monitoring of potential infringing activity. While the specification only describes embodiments involving intellectual property identifiers, it contains several disclaimers explaining that these embodiments are merely exemplary and that the scope of the claims should not be limited by these examples. '625 patent at 1:46-50, 1:51-52, 2:39-41, 4:57-60. Of the 23 claims listed in the '625 patent, only one dependent claim mentions intellectual property. '625 patent at 4:62-8:26.

The one term at issue in this dispute is "identifier." Although this term appears in several of the asserted claims, the Court will focus on claim 2 as an example:

> 2. A system, comprising:
> a server;
> computer code for working in association with a network browser including a back button, a forward button, a refresh button, and a home button, and for displaying a plurality of *identifiers* in a portion of a graphical user interface separate from a window in which content associated with uniform resource locators (URLs) is displayed; and
> computer code for allowing a user to select, during use of the network browser, one of the *identifiers* in the portion of the graphical user interface separate from the window in which the content associated with the URLs is display, for correlating, after the selection, at least one of the URLs with the selected *identifier* in a manner that is based on the selected *identifier* which is distinct with respect to the at least one URL;
> wherein the user is allowed to manually enter the selected *identifier* which is distinct with respect to the at least one URL;
> wherein the *identifiers* and the at least one URL are stored on a user device with the network browser executable thereon; and
> the server being in communication with the user device via a network, the server for storing the *identifiers*;
> wherein the *identifiers* and information associated with the *identifiers* are stored at both the user device and the server.

'625 patent at 5:27-54 (emphasis added).

**THE PARTIES' ARGUMENTS**

Google proposes that the term "identifier" be construed as "database entry which identifies

2

a specific piece of intellectual property." It argues that this construction is consistent with the narrow interpretation of this term contained in the specifications of the '625 patent and with its parent application, the '941 application. Aloft counters that no construction is necessary because the plain meaning of the term "identifier" is easily understood. It argues that Google's proposed construction impermissibly reads a feature of the preferred embodiment into the claims as a limitation.

## APPLICABLE LAW

### I. General Claim Construction Principles

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). In claim construction, courts examine the patent's intrinsic evidence to define the patented invention's scope. *See id.*; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). This intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861.

Claim construction analysis begins with the words of the claims themselves. *Phillips*, 415 F.3d at 1314. A term's context in the asserted claim can be very instructive. *Id*. Other asserted or unasserted claims can also aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent. *Id*. Differences among the claim terms can also assist in understanding a term's meaning. *Id*. For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id*. at

1314-15.

Claims "must be read in view of the specification, of which they are a part." *Id*. (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id*. (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent.").

Although extrinsic evidence can be useful, it is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id*. at 1318. Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id*.

## II.   Interpreting Terms in Light of the Specification

The dispute in this case involves the proper interpretation of a claim term with a broad meaning in ordinary use, but an arguably narrow meaning in the specification. In general, courts must impose a "heavy presumption" in favor of the ordinary meaning of claim terms, which can only

be overcome by statements of "clear disclaimer" expressly indicating "manifest exclusion or restriction." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004); *Brookhill-Wilk 1, LLC v. Intuitive Surgical Inc.*, 334 F.3d 1294, 1301 (Fed. Cir. 2003); *see also Phillips*, 415 F.3d at 1312-13. However, this "heavy presumption" does not arise when the patentee acts as his own lexicographer and gives a claim term a different meaning than the term would otherwise possess. *See Irdeto Access, Inc. v. Echostar Satellite Corp.*, 383 F.3d 1295, 1301(Fed. Cir. 2004); *see also Nystrom v. TREX Co.*, 424 F.3d 1136, 1145 (Fed. Cir. 2005). In these situations, the inventor's lexicography governs. *Phillips*, 415 F.3d at 1316. A patentee can define a claim term either expressly, see *Irdeto Access*, 383 F.3d at 1301, or implicitly, by consistently using a term in a particular way, see *Nystrom*, 424 F.3d at 1145. *See also Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group*, 262 F.3d 1258, 1271 (Fed. Cir. 2001) ("when a patentee uses a claim term throughout the entire patent specification, in a manner consistent with only a single meaning, he has defined that term 'by implication'"); *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, No. 2008-1077, 2009 WL 635630 at *3-4 (Fed. Cir. Mar. 13, 2009) (construing a term narrowly because every disclosed embodiment was consistent with the narrow construction, and the specification never suggested a broader interpretation). Although, consistent usage may define a term, particular embodiments and examples appearing in the specification should not be read into the claims. *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998); *see also Phillips*, 415 F.3d at 1323.

In *Nystrom v. TREX Co.*, the parties disputed whether the term "board" is limited to only planks cut from a log, or whether the term could encompass planks made from any material. 424 F.3d at 1142. Because both parties agreed that the ordinary meaning of the term "board" is "a piece

of sawed lumber," the Federal Circuit presumed that the narrower construction was appropriate. *Id.* at 1145-46. The Federal Circuit noted that the patentee consistently used the term board to refer to wood cut from a log, and that the specification framed the invention in the context of wooden decking materials. *Id.* at 1143. In addition, the prosecution history consistently used the term "board" to refer to wooden decking materials. *Id.* at 1144. Thus, the Court concluded that the presumption in favor of the ordinary meaning of the term "board" had not been rebutted. *Id.* at 1145-46. In fact, even if the ordinary meaning of "board" included non-wooden planks, the patentee had effectively defined "board" as "wooden plank." *Id.*

In *Irdeto Access, Inc. v. Echostar Satellite Corp.*, the parties disputed whether the term "group" includes a group of all subscribers or whether it only includes subsets of all subscribers. 383 F.3d at 1300. The Federal Circuit found that the term "group" had no accepted meaning in the art, and thus neither party was entitled to a heavy presumption in favor of some ordinary meaning. *Id.* The Court began its analysis of the term "group" by analyzing the specification. Although it contained permissive language explaining that the claims should not be limited to the examples in the specification, the patent consistently used the term "group" to refer to subsets. *Id.* at 1301. Furthermore, during prosecution, the patentee disavowed any other meaning of the term "group" and "unequivocally directed the patent examiner, as well as the public, to the specification as the complete source of meaning for the disputed terms." *Id.* at 1303. Thus, the Federal Circuit found that the patentee had assigned the narrower meaning to the term. *Id.*

In *Liebel-Flarsheim v. Medrad, Inc.*, the parties disputed whether the term "opening" referred to an aperture, or more narrowly, to an aperture in front of a pressure jacket. 358 F.3d at 905. Although the ordinary meaning of the term "opening" is simply an aperture, every embodiment of

the invention described in the specification contained an opening in front of a pressure jacket. *Id.* Nonetheless, the Court cited statements in the specification which were inconsistent with the proposed narrow construction of "opening." In addition, the Court found this narrow construction inconsistent with the prosecution history because the patentee amended the claims of the patent to intentionally broaden the claims to cover products without pressure jackets. *Id.* at 909. The Court also found the broader construction inconsistent with the principle of claim differentiation. *Id.* at 910. Thus, the Federal Circuit interpreted the term broadly after determining that the patentee did not explicitly disclaim this broad scope, nor implicitly define the term narrowly through consistent use. *Id.* at 912; *see also Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 807 (Fed. Cir. 2007) (reaching a similar conclusion and emphasizing that the importance of not reading features of the preferred embodiment into claims as limitations).

## DISCUSSION

The parties agree that the plain and ordinary meaning of the term "identifier" is something that identifies. The parties also agree that the patentee did not explicitly define the term "identifier" in the patent. Thus, unless the patentee has implicitly defined this term by using it in a consistent manner, the Court must presume that the plain and ordinary meaning governs. *Liebel-Flarsheim Co.*, 358 F.3d at 913; *Irdeto Access, Inc.*, 383 F.3d at 1301.

Google argues that the patentee has defined the term "identifier" because every embodiment described in the patent deals with intellectual property management. Nonetheless, while the specification only describes embodiments involving intellectual property identifiers, it contains several disclaimers explaining that these embodiments are merely exemplary and that the scope of

the claims should not be limited by these examples. *See* '625 patent at 1:46-50, 1:51-52, 2:39-41, 4:57-60. In addition, the Abstract, Field and Backgound of the Invention, and Disclosure of the Invention sections of the '625 patent are not limited to intellectual property management. These sections broadly claim that the invention "relates to networking, and more particularly to data networking interfaces." '625 patent at 1:14-15.

The claims themselves also support Aloft's broad interpretation of the term "identifier." Of the 23 claims listed in the '625 patent, only dependent claim 19 mentions intellectual property: "[a] system as recited in claim 2, wherein the information includes at least one of one or more of the URLs, the content, and information on intellectual property." '625 patent at 4:62-8:26. Because the only difference between claim 19 and claim 2 is that claim 19 is limited to the intellectual property context, the Court presumes that the term "identifier" is not inherently limited to the intellectual property context. *Phillips*, 415 F.3d at 1314.

Finally, the prosecution history supports Aloft's position.[1] In an Office Action dated April 19, 2007, the Examiner relied on a version of Microsoft Internet Explorer as a basis for rejecting the pending claims. *See* April 19, 2007 Office Action, p. 2. In doing so, the Examiner argued that Internet Explorer's History function used "identifiers" equivalent to those described in the '625

---

[1] Google argues that because Aloft claims priority back to the filing date of the '941 application, the Court's construction of the term "identifier" must be consistent with the invention actually disclosed in the '941 application. However, this argument relates to the appropriate priority date for the '625 patent. The most appropriate course of action is for the Court to construe the '625 patent as it issued. *See Princeton Biochemicals, Inc. v. Beckman Instruments, Inc.*, No. 98-1525, 1999 WL 641233 at *5 (Fed. Cir. Aug. 19, 1999) ("the subsequent filing of the CIP application . . . counsels against applying the usual rule that the entire prosecution history, including parent and grandparent applications, be analyzed in interpreting a claim"); *see, e.g., PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1306-09 (Fed. Cir. 2008) (affirming the District Court's decision to focus on the issued patent for claim construction purposes, and to then compare its construction to the disclosure of the original application for summary judgment purposes). If Google feels that the Court's construction is inconsistent with the '941 application, it may file an appropriate Motion challenging the claimed priority date of the '625 patent.

patent. Because none of the examples of identifiers listed by the examiner identified specific pieces of intellectual property, it is clear that the examiner did not share Google's interpretation of the term "identifier."

This case is distinguishable from the cases cited by Google. Unlike *Nystrom*, the parties have not agreed that the plain and ordinary meaning of the term at issue is narrow. *See* 424 F.3d at 1145-46. Unlike *Irdeto Access*, the '625 patent does not direct the public to the specification as the "complete source of meaning" for the term "identifier." *See* 383 F.3d at 1300. In addition, whereas the intrinsic evidence in *Nystrom* supported a narrow construction because the specification narrowly framed the context of the invention, the intrinsic evidence of the '625 patent supports a broad construction of the term at issue. *See* 424 F.3d at 1143. For example, the '625 patent does not explicitly limit the claimed invention to the intellectual property context or claim that all of the benefits of the '625 patent are realized with regard to intellectual property management. *See id.* This case is also distinguishable from *ICU Medical, Inc. v. Alaris Medical Systems, Inc.*, because in this case both the patent specification and prosecution history suggest a broad interpretation of the term at issue. *See* 2009 WL 635630 at *3-4.

This case is similar to *Liebel-Flarshiem*: the patentee has not explicitly disclaimed the plain and ordinary meaning of the term identifier nor implicitly defined the term through consistent usage. The Court finds that Google's proposed construction impermissibly reads a feature of the preferred embodiment into the claims as a limitation. *See Acumed LLC*, 483 F.3d at 807. The Court further finds that because the plain and ordinary meaning of the term "idenitifier" is easily understood, no

9

construction of this term is necessary.[2]

### III. Agreed Terms

The parties have agreed to the following constructions of the remaining terms: The terms "to manually enter the selected identifier" and "manual entry of one of the identifiers" will be construed as "to enter the identifier by other than selection from a list."

### CONCLUSION

For the foregoing reasons, the Court interprets the claim language in this case in the manner set forth above. For ease of reference, the Court's claim interpretations are set forth in a table attached to this opinion as Appendix A.

**So ORDERED and SIGNED this 24th day of March, 2009.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

---

[2]Google argues that, under *O2 Micro International Ltd. v. Beyond Innovation Technology Co.*, the Court must construe a term when the parties dispute the scope and meaning of claim language. *See* 521 F.3d 1351, 1362 (Fed. Cir. 2008). This Court has routinely rejected that argument. *See Fenner Inv. Ltd. v. Microsoft Corp.*, No. 6:07-cv-8, 2008 WL 3981838 at *3 (E.D. Tex. Aug. 22, 2008); *Alcatel USA Sourcing, Inc. v. Microsoft Corp.*, No. 6:06-cv-499, 2008 WL 3914889 at *15-16 (E.D. Tex. Aug. 21, 2008); *Alcatel USA Res. Inc. v. Microsoft Corp.*, No. 6:06-cv-500, 2008 WL 2625852 at *5 (E.D. Tex. June 27, 2008); *Reedhycalog UK, Ltd. v. Baker Hughes Oilfield Operations Inc.*, No. 6:06-cv-222, 2008 WL 2152268 at *1 (E.D. Tex. May 21, 2008) ("a court may decline to construe a claim term or rely on that term's ordinary meaning if the court resolves the parties' claim-scope dispute and precludes the parties from presenting jury arguments inconsistent with the court's adjudication of claim scope"); *see also Caddy Prod., Inc. v. Am. Seating Co.*, No. 05-800, 2008 WL 2447294 at *2 (D. Minn. June 13, 2008).

By rejecting Google's interpretation of the term "identifier," the Court, has resolved the parties' dispute and foreclosed any need for further construction. *See O2 Micro International Ltd.*, 521 F.3d at 1362. The parties may not interpret the term in a manner that is inconsistent with this opinion. If Google later discovers that Aloft is presenting an inconsistent interpretation of the claims at issue, Google may object at that time. Until then, the Court sees no reason to construe a term that has a clear, easily understandable meaning.

**APPENDIX A**

<table>
<tr><th colspan="5">U.S. Patent No. 7,305,625</th></tr>
<tr><th>Ref. No(s).</th><th>Disputed Claim Terms</th><th>Aloft's Proposed Construction</th><th>Google's Proposed Construction</th><th>Court's Construction</th></tr>
<tr><td>1.</td><td>to manually enter the selected identifier (Claims 1, 2)<br><br>manual entry of one of the identifiers (Claim 20)</td><td>AGREED</td><td>AGREED</td><td>To enter the identifier by other than selection from a list</td></tr>
<tr><td>2.</td><td>identifier (Claims 1-3, 6-11, 20 )</td><td>Aloft is of the view that no construction of this term is required.</td><td>entry in memory which identifies a specific piece of intellectual property</td><td>No construction necessary</td></tr>
</table>